869 A.2d 875

STATE OF NEW JERSEY IN THE INTEREST OF S.S.

STATE OF NEW JERSEY IN THE INTEREST OF N.M.

STATE OF NEW JERSEY IN THE INTEREST OF S.S.

Argued January 18, 2005—Decided March 22, 2005.

*Jeanne T. Covert,* Assistant Prosecutor, argued the cause for appellant, State of New Jersey, (*Vincent P. Sarubbi,* Camden County Prosecutor, attorney; *Jack L. Weinberg,* Assistant Prosecutor, of counsel and on the briefs).

*Kevin G. Byrnes,* Designated Counsel, argued the cause for respondents S.S., N.M. and S.S., (*Yvonne Smith Segars,* Public Defender, attorney).

*Jeffrey S. Mandel,* argued the cause for *amicus curiae* Association of Criminal Defense Lawyers of New Jersey (*Pitney Hardin,* attorneys).

*John A. Ducoff* and *Craig R. Levine,* submitted a joint brief on behalf of *amici curiae* New Jersey Office of the Child Advocate and New Jersey Institute for Social Justice (*Kevin M. Ryan,* attorney for New Jersey Office of the Child Advocate and *Mr. Levine,* attorney for New Jersey Institute for Social Justice; *David P. Kelly,* on the joint brief).

PER CURIAM.

The question presented on these appeals is whether a juvenile, brought before the court under a juvenile family-in-crisis petition (*N.J.S.A.* 2A:4A–83), may be adjudicated delinquent for criminal contempt (*N.J.S.A.* 2C:29–9). In each of the cases before us, the Appellate Division answered that question in the negative and reversed an adjudication of delinquency based upon a criminal contempt arising out of the juvenile's violation of a court order to "obey the rules of home and school."

We now affirm both Appellate Division judgments substantially for the reasons expressed in Judge Wecker's thorough and thoughtful opinion in *State of New Jersey in the Interest of S.S.,*

367 *N.J.Super.* 400, 842 *A.2d* 904 (App.Div.2004).[1] Like the Appellate Division, we have concluded that, on the backdrop of the legislative goals underlying the criminal contempt statute and our juvenile justice scheme, it was "error to subject a status offender … to an adjudication of delinquency based upon a repetition of the runaway conduct and truancy that brought her family to the court for help in the first place." *Id.* at 413, 842 *A.2d* at 913.

■ Our ruling does not leave the juvenile family-in-crisis judge impotent. *N.J.S.A.* 2A:4A-86 specifically provides: "In the case of failure of any person to comply with any orders entered pursuant to this section, the court may proceed against such person for the enforcement of litigants' rights." *See also R.* 5:17–3 (quoting statute verbatim). Pursuant to that authority, juvenile family-in-crisis judges have at their disposal civil proceedings under *Rule* 1:10–3 that include the remedy of incarceration so long as the commitment order specifies "the terms of release." As that requirement underscores, incarceration in the civil context is a last resort intended to be primarily coercive. *Anyanwu v. Anyanwu,* 333 *N.J.Super.* 345, 352–354, 755 *A.2d* 656, 659–61 (App.Div.2000). Thus, the facts of each case require careful consideration to determine whether that remedy is appropriate in the first instance. Moreover, once incarceration is in play, the trial court must assure itself that juvenile status offenders are separated from those accused of being—or adjudicated as—delinquent. The inability to effectuate such segregation of the juvenile status offender would eliminate incarceration as an arrow in the judicial quiver.

We are fully aware, as was the Appellate Division, of the inherent "tension between the judiciary's power (and need) to enforce its own orders and its duty to provide appropriate protection for a juvenile—particularly one whose conduct has not violated any criminal law and has primarily endangered only herself." *S.S., supra,* 367 *N.J.Super.* at 414, 842 *A.2d* at 913. How to

---

[1] *State in the Interest of N.M.* is unpublished.

reconcile those competing interests is a difficult question that requires further review. We therefore refer the issue to the Conference of Family Presiding Judges for study and recommendations for the development of a schematic to harmonize those important concerns.

Affirmed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE, and RIVERA–SOTO—7.

*Opposed*—None.